UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| RENNIE McMANUS-McCOY, | ) | Civil Action No. 4:24-cv-2860-JD-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| COKER UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

I.     **INTRODUCTION**

This action arises from Plaintiff's employment with Defendant.   In her Amended Complaint, Plaintiff alleges causes of action for race discrimination, hostile work environment, and retaliation in violation of 42 U.S.C. § 1981.[1]   Presently before the Court is Defendant's Motion to Dismiss (ECF No. 25).   Plaintiff timely filed a Response (ECF No. 27).   All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.   This report and recommendation is entered for review by the district judge.

II.     **FACTUAL ALLEGATIONS**

Plaintiff, an African-American female, worked for Defendant as Project Director of the Student Support Services Program.   Am. Compl. ¶¶ 5-6, 22 (ECF No. 17).   In her role, Plaintiff was charged with overseeing and managing fund allocations associated with a U.S. Department of

---

1 Plaintiff's original complaint was dismissed with leave to amend her § 1981 cause of action.   See Order (ECF No. 15).

Education grant secured by Defendant for projects fostering college retention and improved graduation rates for students in underrepresented populations, which included management of the Carryforward Fund.  Am. Compl. ¶¶ 7-8.  The crux of Plaintiff's responsibility was to ensure compliance with the U.S. Department of Education grant requirements.  Am. Compl. ¶ 10. Plaintiff was supervised by Katheryn Flaherty, a white female, until approximately September of 2023, when her supervisor became Samantha Hoyt, also a white female.  Am. Compl. ¶¶ 11-12.

Prior to the change in supervisors, Plaintiff's employment record with Defendant was without blemish and contained no written, verbal, or other forms of disciplinary actions against her. Am. Compl. ¶ 14.  However, that changed within approximately one month of Plaintiff reporting to Hoyt.  Am. Compl. ¶ 15.  Plaintiff alleges that almost immediately, it was clear to her that Hoyt had an issue with Plaintiff due to her race given that Hoyt made several racially insensitive remarks in the presence of Plaintiff and other staff members.  Plaintiff alleges that throughout her employment under Hoyt's supervision, she was met with remarks questioning her competency and her ability to perform the job based on her race.   She alleges that such remarks were continuous and made on numerous occasions.  Am. Compl. ¶ 16.

The U.S. Department of Education guidelines require grantees like Defendant to hire a Project Director and empower that person (in this case, Plaintiff) with sufficient authority to effectively administer project(s) for which grant funds are to be used and to write the reports to DOE and submit them unfettered. to ensure that no manipulation of the requirements is done by the receiving University.  Am. Compl. ¶ 19.  However, within one -two weeks of assuming her supervisory role over Plaintiff, Hoyt began undermining Plaintiff's authority and demanding that she take action in violation of grant guidelines and requirements.  Am. Compl. ¶ 18.   In

2

September of 2023, Hoyt made a racially charged statement in front of Plaintiff and her Caucasian staff members indicating that because of Plaintiff's race, she did not trust her with handling the grant money because she was afraid Plaintiff would steal the money.   Am. Compl. ¶ 20.   Hoyt prevented Plaintiff from effectively managing projects in numerous ways, which negatively impacted her ability to administer the grant as prescribed.   Am. Compl. ¶¶ 21-22.   Plaintiff is unaware of any Caucasian employees within Defendant's organization with similar or equal title, authority, or responsibility that were required to endure the same level of restriction, limitation, and micromanagement as she was.   Am. Compl. ¶ 23.

Plaintiff complained to Vice President Flaherty, that the executive leadership team was not an accurate reflection of the school's demographics, that she was the third African-American female to occupy the position of Project Director of Student Support Services within a four-year time span, and she believed her mistreatment and the premature departure of the previous two Project Directors was racially motived.   However, her complaints were never properly addressed. Am. Compl. ¶ 24.   As a result of Plaintiff's complaints, she suffered retaliation from Hoyt, who intensified her racial hostility toward and mistreatment of Plaintiff.   On one occasion, Hoyt verbally berated, demeaned and humiliated Plaintiff in a meeting with members of Defendant's Human Resources Department by openly stating that she did not trust Plaintiff with money.   Am. Compl. ¶ 26.

On November 6, 2023, Plaintiff emailed Hoyt regarding the resignation of a counselor for the project and inquired about posting the vacancy to hire his replacement. When Hoyt denied Plaintiff's request, Plaintiff noted that funds for the position were already allocated in the grant and that leaving the position open would cause a change in scope for the grant that could ultimately

3

require a return of these unused grant funds to the U.S. Department of Education. If that happened, there would be fewer funds available to benefit students participating in the program. Hoyt responded by insulting Plaintiff, and by stating that Plaintiff was more concerned about spending money than serving the students.   Am. Compl. ¶ 28.   That same day, Plaintiff had another meeting with Human Resources to complain about the grant violations and her belief that Hoyt's actions were racially motivated.   Am. Compl. ¶ 29.   The next day, November 7, 2023, Hoyt placed Plaintiff on a Performance Improvement Plan (PIP).   Am. Compl. ¶ 30.

Hoyt continued to insist that Plaintiff take actions contrary to the prescribed grant requirements, and Plaintiff continued to respond by stating what the actual grant requirements were and that she would not circumvent those guidelines.   Am. Compl. ¶ 32.   On November 13, 2023, Plaintiff again complained to Defendant's Human Resources department regarding Hoyt's violations of grant requirements and Hoyt's racially motivated mistreatment towards her.   Am. Compl. ¶ 34.

On December 8, 2023, Plaintiff initiated steps for requesting FMLA leave due to a personal health issue.   Am. Compl. ¶ 35.   On December 14, 2023, Plaintiff's employment was terminated for alleged performance violations even though her PIP was not scheduled for completion until February 7, 2024.   Am. Compl. ¶ 36.

## III.   STANDARD OF REVIEW

Defendants move for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(6).   A Rule 12(b)(6) motion examines whether Plaintiff has stated a claim upon which relief can be granted. The United States Supreme Court has made clear that, under Rule 8 of the Federal Rules of Civil Procedure, the complaint must contain sufficient factual matter, accepted as true, to state

a claim that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

      Expounding on its decision in Twombly, the United States Supreme Court stated in Iqbal:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>      To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 556 U.S. at 677-78 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir.2003).

## IV.    DISCUSSION

      Defendant argues that Plaintiff fails to sufficiently state a claim for race discrimination, retaliation, or hostile work environment under 42 U.S.C. § 1981.  "Section 1981 guarantees to all persons in the United States 'the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.'" Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1017 (4th Cir. 1999) (quoting 42 U.S.C. § 1981(a)).  To succeed on a § 1981 claim, "[a] plaintiff must initially plead and ultimately prove that, but for race, [the plaintiff] would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 589 U.S. 327, 341 (2020).

When evaluating race-discrimination claims under § 1981, courts apply the McDonnell Douglas[2] burden-shifting framework. Giles v. Nat'l R.R. Passenger Corp., 59 F.4th 696, 704 (4th Cir. 2023). Under this framework a plaintiff must first "establish a prima facie case for race discrimination by showing '(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" Id. (quoting Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010)).  The fourth element can also be shown through other circumstances giving rise to an inference of unlawful discrimination.  Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005).  "Although a plaintiff need not plead a prima facie case at this stage, reference to the elements of a claim is helpful to assess whether the plaintiff has stated a plausible claim."  Allgaier v. Microbiologics, Inc., No. 1:22-CV-01900-ELH, 2023 WL 2837336, at *7–8 (D. Md. Apr. 7, 2023) (citing Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003); Young v. Giant Food Stores, LLC, 108 F. Supp. 3d 301, 314 (2015); Cloud v. Brennan, 436 F. Supp. 3d 1290, 1300-01 (N.D. Cal. 2020) ("When a plaintiff does not plead a prima facie case, courts still look to the elements of the prima facie case 'to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'")).

Plaintiff's termination was clearly an adverse employment action.  Defendant argues that Plaintiff has not alleged facts sufficient to show that similarly situated employees outside Plaintiff's protected class were treated differently.  However, the fourth prong of a prima facie case of discrimination can be shown through other circumstances giving rise to an inference of

---

2 McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

discrimination.  <u>Anderson</u>, 406 F.3d at 268.  Given Plaintiff's allegations regarding Hoyt's conduct and actions based on Plaintiff's race, Plaintiff has plausibly alleged that her subsequent termination was because of her race because it occurred under circumstances giving rise to an inference of discrimination.  Thus, dismissal of Plaintiff's race discrimination claim is not appropriate at this stage of the litigation.

Defendant also seeks dismissal of Plaintiff's § 1981 retaliation cause of action.  A prima facie case of retaliation requires that (1) Plaintiff engaged in protected activity; (2) his employer took an adverse action against him; and (3) a causal relationship existed between Plaintiff's protected activity and his employer's adverse action. <u>See</u> <u>Guessous v. Fairview Prop. Investments,</u> <u>LLC</u>, 828 F.3d 208, 217 (4th Cir. 2016).  A Title VII plaintiff need not satisfy all of the prima facie elements set forth above to survive a motion to dismiss. <u>See</u> <u>Swierkiewicz v. Sorema N. A.,</u> 534 U.S. 506, 510 (2002) ("The prima facie case under <u>McDonnell Douglas</u>, however, is an evidentiary standard, not a pleading requirement.").  Defendant argues that Plaintiff's allegations regarding complaints of race discrimination are vague and conclusory and that she has not alleged a causal connection between those vague complaints and any adverse action.

A plaintiff engages in protected activity by opposing an employment activity that was "actually unlawful under" the relevant discrimination statute or that the plaintiff reasonably believed was unlawful under the relevant discrimination statute. <u>Boyer–Liberto v. Fontainebleau</u> <u>Corp.</u>, 786 F.3d 264, 282 (4th Cir. 2015) (quoting <u>EEOC v. Navy Fed. Credit Union</u>, 424 F.3d 397 (4th Cir. 2005)).  Here, Plaintiff alleges that she complained to Vice President Flaherty, that the executive leadership team was not an accurate reflection of the school's demographics, that she was the third African-American female to occupy the position of Project Director of Student

Support Services within a four-year time span, and she believed her mistreatment and the premature departure of the previous two Project Directors was racially motived. Am. Compl. ¶ 24. She also alleges that on November 6, 2023, and again on November 13, 2023, she complained to Defendant's Human Resources department regarding Hoyt's violations of grant requirements and Hoyt's racially motivated mistreatment towards her. Am. Compl. ¶¶ 28-29, 34. These allegations are sufficient to allege that Plaintiff engaged in protected activity.

Next, "[a] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." Pascual v. Lowe's Home Ctrs., Inc., 193 F. App'x 229, 233 (4th Cir. 2006). Though it is not clear when Plaintiff raised her first complaint of race discrimination to Vice President Flaherty, she specifically alleges that she made similar complaints of racially motivated behavior by Hoyt to the Human Resources department on November 6, 2023, and November 13, 2023. She was terminated on December 14, 2023. Although courts have declined to articulate a definitive rule as to what time periods qualify as close temporal proximity, the Fourth Circuit has held that two-and-a-half and one-month gaps are sufficiently narrow to satisfy causation for a plaintiff's prima facie case. See Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 253 (4th Cir. 2015); King v. Rumsfeld, 328 F.3d 145, 151 & n.5 (4th Cir. 2003). Thus, Plaintiff's allegations are sufficient to survive a motion to dismiss with respect to her retaliation cause of action.

Finally, Defendant seeks dismissal of Plaintiff's hostile work environment claim. To state a hostile work environment claim, Plaintiff must allege sufficient facts to show that the alleged conduct she experienced was: (1) unwelcome; (2) based on a protected characteristic; (3) sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive

work environment; and (4) imputable to her employer. <u>Pryor v. United Air Lines, Inc.</u>, 791 F.3d 488, 495-96 (4th Cir. 2015). Stated differently, a plaintiff must plausibly plead that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). There is no precise formula for determining whether a work environment is "abusive" or "hostile"; such a determination can be made "only by looking at all the circumstances." <u>Id.</u> at 23. Defendant primarily argues that Plaintiff has failed to allege facts establishing conditions so severe or pervasive as to alter the conditions of employment.

Plaintiff alleges that Hoyt made several racially insensitive remarks in the presence of Plaintiff and other staff members, and such remarks were continuous and made on numerous occasions.  Am. Compl. ¶ 16.  Plaintiff alleges that throughout her employment under Hoyt's supervision she was "met with remarks concerning her ability to perform her job based on her race."  Am. Compl. ¶ 16.  She also alleges that "Hoyt made a racially charged statement in front of Plaintiff and Plaintiff's similarly situated Caucasian staff members that Hoyt did not trust Plaintiff with handling the grant money which directly stated that Plaintiff because of her race might steal the money."  Am. Compl. ¶ 20.  She alleges another instance where Hoyt said essentially the same thing in front of people from Defendant's Human Resources Department. Am. Compl. ¶ 26.

When determining whether conduct was sufficiently severe or pervasive to create a hostile work environment, courts consider such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993); see also Dufau v. Price, 703 Fed. App'x 164, 166 (4th Cir. 2017). Although hostile work environment claims often involve repeated conduct, an "isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (quotations and alterations omitted); see Pryor v. United Air Lines, Inc., 791 F.3d 488, 496 (4th Cir. 2015); Okoli v. City Of Baltimore, 648 F.3d 216, 220 & n.5 (4th Cir. 2011). Hoyt stating on more than one occasion, in front of different employees, including Plaintiff, that because of Plaintiff's race, she could not be trusted to handle money, along with the other allegations of continuous, racially incentive remarks, is sufficient to give rise to a hostile work environment claim.   Thus, dismissal is not appropriate at this time.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion to Dismiss (ECF No. 25) be denied.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

March 19, 2025
Florence, South Carolina

10